# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00826-SBP

SAMBE DIALLO,

      Petitioner,

v.

MARKWAYNE MULLIN,
TODD LYONS,
ARTHUR WILSON, and
JOHNNY CHOATE,[1]

      Respondents.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on Petitioner Sambe Diallo's Verified Petition for Habeas Corpus (the "Petition"). ECF No. 1. The parties have consented to proceed before a United States Magistrate Judge for all proceedings. ECF No. 8.

      Mr. Diallo seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention in Immigration and Customs Enforcement ("ICE") custody. ECF No. 1 at 3. He asks the court to declare that his continued detention under 8 U.S.C. § 1231(a)(6)—which allows for the detention of "inadmissible or criminal aliens" ordered removed beyond a ninety-day period— violates his rights under the Due Process Clause of the Fifth Amendment. *Id.* at 12. As relief, he

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Mullin, the current Secretary of the Department of Homeland Security, is substituted for former Secretary Kristi Noem in this action.

seeks "a constitutionally adequate custody hearing" within fourteen days of the date of this Order and, if such a hearing is not provided, release from custody "under reasonable conditions of supervision." *Id.* at 12-13. For the reasons set forth below, Mr. Diallo's Petition is **GRANTED in part**.

**BACKGROUND**

The court finds that the material facts concerning Mr. Diallo's immigration history are not in dispute. In describing those facts here, the court draws heavily on the factual background set forth in the response to the court's March 4, 2026 order. ECF No. 12.

Mr. Diallo is a native and citizen of Mauritania. *See* ECF No. 12-1, Ex. A, Declaration of Alexis Luquin ¶ 4. Respondents, each sued exclusively in their official capacities, are Markwayne Mullin, the Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, the Acting Director of ICE; Arthur Wilson, ICE Field Office Director; and Johnny Choate, the Warden of the Aurora Immigration Detention Facility (collectively, "Respondents").

On October 2, 2023, U.S. Customs and Border Protection ("CBP") agents apprehended Mr. Diallo near Lukeville, Arizona, shortly after he crossed the U.S.-Mexico border into the United States. *Id.* ¶ 5. CBP determined that Mr. Diallo is inadmissible to the United States and processed him for removal proceedings. *Id.* ¶¶ 6-7. On October 4, 2023, CBP issued a Notice to Appear ("NTA"), initiating removal proceedings under 8 U.S.C. § 1229a before the Executive Office for Immigration Review ("EOIR"). *Id.* ¶ 8. The NTA charged Mr. Diallo with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), which addresses a situation involving "[a]n alien present in the United States without being admitted or paroled, or

2

who arrives in the United States at any time or place other than as designated by the Attorney General[.]" *See id.*

On October 6, 2023, Mr. Diallo was transferred to ICE custody. *Id.* ¶ 9. On October 25, 2023, Mr. Diallo appeared before an Immigration Judge ("IJ") for an initial hearing in removal proceedings. *Id.* ¶ 10. The IJ advised Mr. Diallo of his rights and responsibilities. *Id.* Mr. Diallo requested additional time to prepare his case, which the IJ granted. *Id.* On October 30, 2023, ICE released Mr. Diallo from custody on an Order of Release on Recognizance. *Id.* ¶ 11. On February 1, 2024, Mr. Diallo filed with the EOIR a Form I-589 Application for Asylum and for Withholding of Removal. *Id.* ¶ 12.

On June 12, 2025, ICE officers encountered Mr. Diallo in Denver, Colorado, and determined that he did not possess documentation authorizing his entry into, or presence in, the United States. *Id.* ¶ 13. Mr. Diallo was arrested and detained pursuant to 8 U.S.C. § 1225(b) ("Inspection of Applicants for Admission"). *Id.* ¶¶ 13-14; *see also* Warrant for Arrest of Alien, ECF No. 1-4 at 2-3 (indicating that an ICE deportation officer executed the warrant on June 12, 2025). Consequently, Mr. Diallo's release on the Order of Release on Recognizance was terminated. ECF No. 12-1 ¶ 13. On July 23, 2025, DHS filed with the EOIR a Form I-261, Additional Charges of Inadmissibility/Deportability, charging Mr. Diallo with an additional charge of inadmissibility pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who, at the time of application for admission, "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document." *Id.* ¶ 15.

On August 12, 2025, an IJ conducted a custody redetermination hearing pursuant to 8 C.F.R. § 1236 and released Mr. Diallo on a bond in the amount of $1,500. ECF No. 1-3 at 1-2.

On October 27, 2025, Mr. Diallo appeared before an IJ for a hearing on the merits of his application for asylum. *Id.* ¶ 16. That IJ found Mr. Diallo removable as charged, denied his application for asylum, and ordered him removed to Mauritania. *Id.* However, the IJ also granted Mr. Diallo's application for withholding of removal to Mauritania under 8 U.S.C. § 1231(b)(3), which restricts removal to a country where an alien's life or freedom would be threatened. *Id.* The parties waived appeal of the IJ's decision, and the removal order became administratively final on October 27, 2025. *Id.* ¶ 17.

Mr. Diallo is currently detained pursuant to 8 U.S.C. § 1231 as ICE pursues his removal to an alternative country. *See id.* ¶¶ 18-19; *see also* 8 U.S.C. § 1231(b)(1)(C). On December 10, 2025, ICE served Mr. Diallo with a Notice of File Custody Review. ECF No. 12-1 ¶ 20. According to Respondents,[2] this notice advised Mr. Diallo that ICE would review his custody status and potential for release on an order of supervision. *Id.* The notice also set forth some of the criteria that ICE would consider when deciding whether to release or continue to detain Mr. Diallo and informed him that he was allowed to submit documents in support of his release. *Id.*

On January 12, 2026, ICE conducted a Post Order Custody Review pursuant to 8 C.F.R. § 241.4, the section of the Code of Federal Regulations that governs the detention of noncitizens beyond the removal period. *Id.* ¶ 21. ICE determined that Mr. Diallo did not satisfy the criteria for release because he failed to demonstrate that he will not pose a significant risk of flight pending removal from the United States, and so ICE has continued to detain him. *Id.* Mr. Diallo asserts that "[t]he January 12, 2026 'Decision to Continue Detention' contains a single substantive finding: that Petitioner 'poses a significant risk of flight pending [his] removal from

---

[2] The December 10, 2025 notice is not in the court record.

the United States.'" ECF No. 13 at 3. Mr. Diallo accurately describes the contents of the Decision to Continue Detention. *See* January 12, 2026 Decision to Continue Detention, ECF No. 1-1 at 1 (stating that "ICE has made such determination based upon: Posing a significant risk of flight pending your removal from the United States").

Respondents state that Mr. Diallo then "requested a personal interview in support of his custody review," ECF No. 12-1 ¶ 22, but it is clear from the record that the purpose of this "custody review" was not to evaluate whether Mr. Diallo was properly detained in the first instance, but rather to assist ICE's "[Enforcement Removal Operations] Removal Division" in Washington, D.C., in removing Mr. Diallo from the United States. ECF No. 1-1 at 3 ("To assist in the ERO Removal Division custody review, you will be afforded a personal interview."). On February 20, 2026, ICE served Mr. Diallo with a "Notice to Alien of Interview for Review of Custody Status.," *id.,* which it scheduled for March 10, 2026. *Id.* However, Mr. Diallo informed ICE that he no longer wanted to interview with the ERO Removal Division and declined to participate, *id.*, and instead filed the instant Petition on February 27, 2026. ECF No. 1. An "interview panel" subsequently noted that Mr. Diallo declined to participate in the interview and that he failed to meet the criteria for release set forth under 8 C.F.R. § 241.4(e), which includes the requirements that he "not pose a significant flight risk if released." ECF No. 12-1 ¶ 22.[3]

---

[3] The criteria for release under that provision are that "(1) travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest; (2) the detainee is presently a non-violent person; (3) the detainee is likely to remain nonviolent if released; (4) the detainee is not likely to pose a threat to the community following release; (5) the detainee is not likely to violate the conditions of release; and (6) the detainee does not pose a significant flight risk if released." 8 C.F.R. § 241.4(e) (citation modified).

Respondents represent that "DHS and the U.S. Department of State are working in coordination to evaluate and select a third country for [Mr. Diallo's] removal." *Id.* ¶ 23. Meantime, Mr. Diallo remains detained at the ICE contract detention facility in Aurora, Colorado. *Id.* ¶ 24.

The crux of Mr. Diallo's procedural due process claim is that the January 12, 2026 Decision to Continue Detention fails to satisfy "the constitutionally required level of individualized process" because it conclusorily states that he "'poses a significant risk of flight pending [his] removal from the United States,'" but "identifies no facts in support of that conclusion." ECF No. 13 at 2 (quoting ECF No. 1-3 at 3). Specifically, Mr. Diallo emphasizes, the Decision to Continue Detention

> references no prior failures to appear, no criminal history, no violations of supervision and no disciplinary infractions—because there are none. It does not describe any changed circumstances since the prior custody determination [in August 2025]. And critically, it does not acknowledge or reconcile itself with the only neutral adjudication of [his] flight risk on record.[4]

*Id.* at 3.

## LEGAL FRAMEWORK

### A.     Habeas Corpus Under 28 U.S.C. § 2241

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal

---

[4] The court understands the "neutral adjudication" to refer to the August 12, 2025 determination to release Mr. Diallo on a $1,500 bond.

custody." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D.

Colo. Dec. 17, 2025) (citation modified) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484

(1973)). "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's

confinement." *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May

5, 2025) (quoting *Preiser*, 411 U.S. at 500).

"Habeas corpus proceedings under § 2241 'remain available as a forum for statutory and

constitutional challenges to post-removal-period detention' effectuated under § 1231(a)(6)."

*Juarez v. Choate*, No. 24-cv-00419-CNS, 2024 WL 1012912, at *3 (D. Colo. Mar. 8, 2024)

(quoting *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26,

2024)). "[A] noncitizen may bring a habeas petition under this section if his or her confinement

violates the Fifth Amendment's guarantee of due process." *Id.* (citing *Diaz-Ceja v. McAleenan*,

No. 19-cv-00824-NYW, 2019 WL 2774211, at *3 (D. Colo. July 2, 2019)).

**B.      Post-Removal Detention Under 8 U.S.C. § 1231**

Mr. Diallo is detained pursuant to 8 U.S.C. § 1231(a), which generally provides that

when noncitizens are issued an order of removal, they are subject to mandatory detention and

required to be removed within ninety days, a time frame known as "the removal period." *See* 8

U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered

removed, the Attorney General shall remove the alien from the United States within a period of

90 days[.]"). "During the removal period, the Attorney General shall detain the alien." *Id.*

§ 1231(a)(2)(A). After the ninety-day period, certain noncitizens may continue to be detained if

they are inadmissible, removable on certain grounds, or deemed to be a danger or flight risk. *Id.*

§ 1231(a)(6). While §1231(a)(6), does not set forth a specific time for how long post-removal

detention may last, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court found that the detention of a noncitizen subject to a final order of removal is presumptively reasonable. *Id.* at 699-701. "Inadmissible or criminal aliens," including those deemed inadmissible under 8 U.S.C. § 1182 based on their presence in the United States without having been admitted or paroled, as well as those noncitizens deemed to be "a risk to the community or unlikely to comply with the order of removal," may be detained beyond the removal period, but if they are released, they "shall be subject to the terms of supervision" articulated in 8 U.S.C. § 1231(a)(3). 8 U.S.C. § 1231(a)(6).

Regulations promulgated under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, govern the "authority to continue an alien in custody or grant release or parole under" 8 U.S.C. § 1231(a)(6). *See* 8 U.S.C. § 241.4(a). These regulations were intended to "provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]" *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). As pertinent here, among the provisions of § 241.4 designed to provide procedural due process is the requirement that the detainee receive "[a] copy of any decision . . . to detain," and that the decision "briefly set forth the reasons" for that detention. *See* § 241.4(d); *see also Ruiz Primero v. Mattivelo*, No. 25-11442-IT, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (noting that a petitioner who was re-detained under § 1231(a)(6) was "constitutionally entitled" to the process set forth in 8 C.F.R. § 241.4(d), which requires that a "decision to retain custody beyond the removal period must 'briefly set forth the reasons for the continued detention'").

## ANALYSIS

Respondents argue that the Petition is premature under *Zadvydas* because Mr. Diallo has been detained less than six months, ECF No. 12 at 7-8, although the six-month mark will have been met on or about April 27, 2026. However, even if a claim based solely on *Zadvydas* is slightly premature, that does not dispose of Mr. Diallo's particular procedural due process claim. Mr. Diallo does not challenge the *Zadvydas* safe harbor[5] or, at least at this juncture, contend that his detention has become unreasonably prolonged. Neither does he assert that the process established in § 241.4 is constitutionally inadequate. *See id.* at 10 (arguing that *Zadvydas* "*did not* hold that framework unconstitutional, at least during the six-month presumptively reasonable period"). Rather, Mr. Diallo's claim is that ICE officials have detained him in violation of ICE's own regulations under § 241.4 and, in so doing, violated his rights under the Fifth Amendment. *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 156 (W.D.N.Y. 2025) (in rejecting the

---

[5] Even if Mr. Diallo had chosen to bring such a claim, it would not necessarily be barred. "Even within the presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Villanueva v. Tate*, Civ. No. H-25-3364, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025)."Were it otherwise, the Government could simply detain noncitizens who had been released on orders of supervision, release them at the five-month-twenty-nine-day mark, and then immediately re-detain them, starting the *Zadvydas* clock anew." *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) (recognizing that "*Zadvydas* did not announce a bright line rule that permits detention for at least six months.") (citing *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) ("Indeed, in *Zadvydas*, the Court noted that such presumptions are intended to 'guide lower court determinations,' without stating that they mandate a particular result or establish a bright-line rule.") (quoting *Zadvydas*, 533 U.S. at 701)).

government's nonjusticiability argument, observing that the "argument misses the point"; the petitioner "challenges the process under which he was detained, regardless of ICE's substantive authority to do so; that is, he challenges not only the fact that he is currently held but the fact that he is being held *without the proper procedures*") (citing *Torres-Jurado v. Biden*, No. 19 Civ. 3595 (AT), 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (noting that notwithstanding ICE's discretion to execute a removal order, ICE "cannot remove" a noncitizen, even one subject to a final removal order, "in any manner [it] please[s]") (citation omitted)).

It is beyond dispute that Mr. Diallo enjoys due process rights in this context. *Zadvydas*, 533 U.S. at 693 (observing that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (citation omitted); *Kumar v. Wamsley*, No. 25-cv-1772, 2025 WL 2677089, at *3 (W.D. Wash. 2025) ("While Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens . . . that does not negate Petitioner's liberty interest in not being detained."). Indeed, if ICE wishes to continue detaining a noncitizen held under § 1231(a) beyond the ninety-day removal period, "ICE *must* follow certain agency procedures codified at 8 C.F.R. § 241.4." *Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *2 (D.R.I. Nov. 26, 2025) (emphasis added). "These procedures are intended to provide the noncitizen with fundamental due process protections that courts have found to be constitutionally required, such as the right to notice and an opportunity to be heard." *Id.*; *see also, e.g.*, *Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026) (same). "Therefore, ICE violates a noncitizen's due process rights when the agency . . . fails to comply with these revocation procedures" in § 241.4. *Hall*, 2026 WL 18583, at *4 (citations omitted).

As to the specific requirements applicable to the ninety-day determination, 8 C.F.R. § 241.4(k)(1)(i) states that "[p]rior to the expiration of the [ninety-day] removal period, the district director or Director of the Detention and Removal Field Office shall conduct a custody review for an alien . . . where the alien's removal, while proper, cannot be accomplished during the period, or is impracticable or contrary to the public interest," and clarifies that this involves "notify[ing] the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status." And, as previously noted, any such notice must "briefly set forth the *reasons* for the continued detention." 8 C.F.R. § 241.4(d) (emphasis added). Where that notice is insufficient, courts have concluded that ICE has run afoul of the noncitizen's due process rights. *Bonitto v. Bureau of Immigration & Customs Enforcement*, 547 F. Supp. 2d 747, 757-58 (S.D. Tex. 2008) (concluding, where factual grounds or bases for the decision were insufficiently provided to the noncitizen, that "DHS's denial of release to Bonitto at the 90-day . . . juncture may be correct or incorrect, but at present it appears to lack a reasoned basis"); *see also, e.g.*, *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 389, 393 (W.D.N.Y. 2009) (reaching similar holdings regarding petitioner's ninety-day and 180-day reviews).

This obligation should not be taken lightly, and failure to provide a reasoned analysis will result in insufficient justification to detain a noncitizen past the ninety-day mark. Stating, for example, that an alien will "pose a danger to society" and "has [criminal] convictions," or that he is expected to be removed from the United States in the reasonably foreseeable future, does not justify continuing the noncitizen's detention, nor does providing only conclusory or boilerplate statements in support of detention. *See Bonitto*, 547 F. Supp. 2d at 757-58; *see also*

*D'Alessandro*, 628 F. Supp. 2d at 376, 389, 393 (concluding similarly); *Singh v. Taylor*, No. EP-26-cv-00155-DB, 2026 WL 360913, at \*4 (W.D. Tex. Feb. 9, 2026) (concluding that ICE's attempt to justify detention via its "discretion" at the ninety-day mark was a "conclusory rationale" that did "not pass muster"); *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (finding that where "the reasons contained in the ninety-day review were boilerplate and pretextual," petitioner had not received the requisite "meaningful individualized review").[6]

Put simply, "[d]etention beyond the removal period may be maintained only upon compliance with applicable process." *Misirbekov*, 796 F. Supp. 3d at 439 (citing *Bonitto*, 547 F. Supp. 2d at 756). Critically, "[t]he review process contemplated by the regulations is *a meaningful individualized review*, as the interest involved is the 'most elemental of liberty interests—the interest in being free from physical detention.'" *Id.* (quoting *Bonitto*, 547 F. Supp. 2d at 756) (quoting *Foucha* v. *Louisiana*, 504 U.S. 71, 80 (1992) (emphasis added)). Here, it is undisputed that, despite conducting a ninety-day custody review, ICE provided no substantive discussion or justification in reaching its conclusions. Instead, ICE merely mimicked the language in the regulation—stating that Mr. Diallo "poses a significant risk of flight pending [his] removal from the United States," ECF No. 13 at 2—which, devoid of factual support as it is, is substantively meaningless from a notification perspective. Consistent with Mr. Diallo's assertions, Respondents have pointed to nothing indicating that ICE engaged in even cursory

---

[6] In evaluating the due process question, Mr. Diallo invokes the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See* ECF No. 1 at 8-10. The court need not conduct that analysis in detail. The regulatory procedures in 8 C.F.R. § 241.4 were expressly designed to provide the notice and individualized reasoning that due process demands. Because Respondents failed to follow those procedures, they necessarily failed to provide the "meaningful" process *Mathews* requires.

discussion, consideration, or reasoning regarding his specific circumstances in reaching this conclusion, let alone that ICE provided any such reasoning to Mr. Diallo. *See id.*

The court therefore respectfully finds that Respondents have failed to afford Mr. Diallo the procedural safeguards contained in the regulations implementing § 1231 in conducting his ninety-day custody review. Respondents cannot constitutionally detain Mr. Diallo without complying with these safeguards, regardless of whether he qualifies for release under *Zadvydas*. As a result, the court concludes that Mr. Diallo's request for relief in the form of reconsideration of his custody determination must be granted.

The court notes, however, that although Mr. Diallo specifically requests a "constitutionally adequate custody hearing before a neutral adjudicator," *see* ECF No. 1 at 12, he has not addressed what he means by this request or provided any support for awarding this relief. Accordingly, the court deems any argument on this point to be insufficiently developed and finds that Respondents should instead be directed to provide Mr. Diallo with meaningful post-removal custody review consistent with the due process mandated under the procedures codified at 8 C.F.R. § 241.4, including some delineation of "the *reasons* for the continued detention" beyond the mere iteration of the regulation. *See* ECF No. 1-3 (stating that Mr. Diallo "poses a significant risk of flight pending [his] removal from the United States," with no supporting facts); *see also, e.g.*, *Bonitto*, 547 F. Supp. 2d at 758 (under similar circumstances, awarding "meaningful post-removal custody review, as contemplated in 8 C.F.R. §§ 241.4 and 241.13").

Finally, the court must address who bears the burden at the post-removal custody review it is ordering. The court finds that Mr. Diallo bears the burden. Under 8 C.F.R. § 241.4(d)(1), "the alien" must "demonstrate[] to the satisfaction of the Attorney General or her designee" that

13

release will not pose a danger to the community or a significant risk of flight pending removal. *Zadvydas* expressly reviewed the regulatory framework governing post-removal detention under § 1231(a)(6), including 8 C.F.R. § 241.4, and approved this allocation of the burden to the noncitizen. *See* 533 U.S. at 683.

The court is aware that, in a different context, courts have applied the balancing test from *Mathews*, 424 U.S. at 319, to conclude that due process requires the government to bear the burden by clear and convincing evidence at bond hearings under 8 U.S.C. § 1226(a), particularly where detention has become prolonged. *See, e.g.*, *Alfaro Herrera v. Baltazar*, No. 25-cv-04014-CNS, 2026 WL 91470, at *10-12 (D. Colo. Jan. 13, 2026). That rule, however, applies to discretionary bond hearings in *pending* removal proceedings, where no final order of removal has yet been entered and the court is often fashioning a remedy in the first instance. Here, by contrast, the court is directing Respondents to conduct the specific post-removal custody review already provided for in 8 C.F.R. § 241.4(d)(1), which expressly places the burden on the noncitizen. *Id. Zadvydas* considered and left undisturbed this very framework. The court therefore adheres to this regulatory allocation and observes that Mr. Diallo's burden, while not insubstantial, is not especially heavy; he need not, for example, meet a clear-and-convincing-evidence standard. *See, e.g.*, *D'Alessandro*, 628 F. Supp. 2d at 392.

As a result, the court finds that the Petition should be granted in part. Although the court finds that it would not be appropriate to shift the burden of proof to Respondents here, as Mr. Diallo requests, the court finds that it may grant the relief requested in the Petition in all other respects. The court therefore finds that Mr. Diallo's continued detention without meaningful post-removal custody review violates due process and, accordingly, orders that he be provided

with such review—including that he be informed of the reasons for ICE's assessment that his release would "present a significant risk of flight," assuming ICE continues to adhere to that rationale following the ordered review.

## CONCLUSION

For the foregoing reasons, the court respectfully **ORDERS** that the Verified Petition for Habeas Corpus (ECF No. 1) is **GRANTED in part**. Within fourteen days, Respondents are ordered to provide Mr. Diallo with a meaningful post-removal custody review as contemplated in 8 C.F.R. § 241.4 and any related provisions of law, consistent with the requirements thereof as set forth by the court above. Mr. Diallo will bear the burden of proof in this review process.

If such review is not provided within fourteen days of the date of this Order, Respondents are ordered to release Mr. Diallo immediately.[7] Finally, Respondents are ordered to file a status report in order to certify compliance within twenty-one days of the date of issuance of this Order.

DATED: April 22, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[7] This conclusion is reinforced by recent decisions in this District holding that ICE's failure to comply with the procedural requirements of 8 C.F.R. § 241.4 constitutes a due process violation that renders continued detention unlawful and warrants immediate release. *See, e.g., Izquierdo Navarro v. Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *3-4 (D. Colo. Feb. 18, 2026); *Virachak v. Baltazar*, No. 26-cv-00391-STV, 2026 WL 746285, at *5 (D. Colo. Mar. 17, 2026).